MEMORANDUM OF DECISION RE MOTION TO REOPEN AND SET ASIDE JUDGMENT
1. Procedural Background
On July 20, 2000, the court granted petitions for the termination of the parental rights of Crystal M. to her two oldest children. Crystal had earlier consented to the termination of her parental rights on June 30, 2000 and her consent had been accepted as knowingly and voluntarily made with the advice and assistance of competent counsel. (Lopez, J.) The court on June 30, 2000 had conducted a thorough canvass to reach its finding. On October 12, 2000, Crystal's rights to her two youngest children were also terminated, based upon her earlier consent.
On November 16, 2000, Crystal filed a motion to reopen and set aside the judgment, alleging that she was "under the influence of substances which impaired her ability to understand the nature of her consent."[2]
On February 9, 2001, the court conducted an evidentiary hearing concerning the allegations made by Crystal. The court had previously received and reviewed the transcript of the consent canvass of June 30, 2000. For the reasons set forth in detail below, the court denies the motion to reopen and set aside the judgments of July 20, 2000 and October 12, 2000.
2. Law re reopening of judgments
As has been ably argued on behalf of DCF, both Connecticut General Statutes § 52-212a and § 45a-719 apply to this case. Connecticut General Statutes § 52-212a provides:
 "unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment . . . rendered in the superior court may not be reopened . . . unless a motion to open. . . . is filed with four months succeeding the date on which it was rendered or passed."
It is conceded that the motion in this case was filed within the four-month period as to both termination judgments. Connecticut General Statutes § 45a-719 requires the court consider the best interests of the child before granting a motion to reopen or set aside a judgment terminating parental rights. As set forth below, as the court does not CT Page 3147 reach that issue in this case, there is no need to analyze this statutory requirement further.
In the context of termination of parental rights proceedings, the court in In re Baby Girl B., 224 Conn. 163, 287, 618 A.2d 1, (1992) held that:
 "a judgment on a petition for the termination of parental rights is a civil judgment for purposes of § 52-212a. Even after the expiration of the appeal period, the trial court has continuing jurisdiction within the authority conferred by § 52-212a to open a judgment terminating such parental rights."
The court concludes, therefore, that it has jurisdiction to entertain the motion filed by the respondent mother.
3. Facts
On June 30, 2000, the court questioned Crystal M., asking her if she had had enough time to speak with her attorney and whether she was satisfied with what had been discussed. She was asked whether she understood that she was giving up all rights to her children. She indicated she understood that her consent was something she could not retract. She was specifically asked:
 "Ms. M., are you under the influence of anything today? Any alcohol? And drugs? Any medication? Anything that can affect your ability to make this decision?
Her answer was "No." The court further asked if there was any reason anyone in attendance knew why the court should not accept the consent. Ms. M's counsel responded:
 "No, Your Honor. I just wanted the court to know that this is a very difficult decision that Crystal's made. We spent a lot of time taking about it. She truly loves her children and I think if the circumstances were different, she obviously would not be sitting here doing this. She regrets what she has to do today, but she's doing it thoughtfully, and with a lot of love in her heart."
At the evidentiary hearing on the motion to reopen, Crystal's former counsel testified that she spoke to her client at length the evening before the consent hearing. She stated that she had reviewed Crystal's CT Page 3148 choices with her as well as her rights and obligations under the pending petitions and the possible outcome at trial. On the day of the hearing, she drove her client to the courthouse and spent time with her in the car prior to reaching court. Attorney Chromik testified that she noticed nothing unusual in the behavior of her client that day. She testified that her client was emotional and upset, but that this was to be expected. She stated that she observed festering sores on Crystal's arms. She spoke to the DCF social worker about the sores after the hearing and the social worker confirmed that she thought that these sores were infected needle marks. The sores, however, did not appear to be fresh to Attorney Chromik.
Attorney Chromik stated, when questioned whether or not she believed that her former client was under the influence of drugs on June 30, 2000, "I was not under that impression." She testified that she had no concerns about her client's consent being knowing and voluntary. After the hearing, Attorney Chromik drove her client to her home. Again, she did not notice anything unusual. The DCF social worker responsible for the matter testified that she, too, had attended the hearing on June 30, 2000. She testified that she did not have any reason to believe that Crystal was under the influence of drugs that day. She did have opportunity to observe her and speak to her before the court hearing began when she was signing the consent forms.
Approximately a month later on July 25, 2000, the social worker contacted Crystal and spoke with her. At that time, Crystal asked whether the social worker had delivered certain presents to the children which she had given the social worker at the time of the June hearing. The social worker stated she would not deliver the presents until the children's counselor thought that was appropriate. At that point, Crystal became very upset. On August 1, 2000, Crystal spoke to the social worker again about the same topic. She was then incarcerated. The social worker repeated what she had earlier said about delivering the gifts. When Crystal asked about having a "good-bye" visit with her children, the social worker again spoke of how fragile the children had been and that it would be up to their counselor. She told Crystal she did not think that this would happen.
On August 1, 2000 the social worker also received a call from Attorney Chromik about Crystal and how upset she was. Attorney Chromik also testified that it was on this day that Crystal spoke to her about the fact that she had taken drugs on the day she gave her consent. She relayed this information to the social worker and testified: "my client was telling me she was under the influence of drugs when she consented." She testified that the social worker replied: "Of course, she was, we all knew this." The social worker testified that she did not make this CT Page 3149 statement. The narrative record of these conversations with Crystal and Attorney Chromik[3] does not reflect this portion of their discussion. Despite this turn of events, Attorney Chromik took no immediate action until her return from her summer vacation. She reviewed her notes and her file. She did not contact Crystal until October, 2000 as she thought it would be good for Crystal to stabilize and settle down, while incarcerated. As noted, it was not until November 16, 2000, that the motion to reopen was filed with the court.
The social worker testified that, despite Crystal's questions about the delivery of the gifts and the good-bye visit, that nothing about either topic had been discussed before the consent hearing. Attorney Chromik confirmed that this was so. Nonetheless, the social worker testified that "Crystal was upset and irate during the second phone contact and did not like what I was telling her."
Crystal herself testified at the hearing. She provided no detail about the quantity of drugs or when she had taken them on June 30, 2000. She stated that she was on "crack and Zanax." She stated that she was crying a lot and initially testified that she did not remember Judge Lopez's question concerning whether or not she was under the influence of drugs that day. She did recall her discussion with Attorney Chromik the night before the hearing. She did admit that she knew her attorney was going to pick her up and that she was ready and waiting when her attorney arrived. She was quite vague concerning her recollections of the events of June 30, 2000, although she did acknowledge that she understood what the hearing was about. She was unsure where she was then living and did not recall exactly how long she had been represented by Attorney Chromik. She did remember her previous attorney and her discussions with him. She admitted that she answered the question about taking drugs on that day in the negative and that she did not raise the issue about being on drugs until August 1, 2000, after she was incarcerated.
4. Issue
The issue raised by the motion is whether or not Crystal M. should be allowed to reopen the termination judgments because of her claim that her consent and waiver of her rights was not knowing, intelligent and voluntary. Waiver has been defined by the Connecticut courts as "the voluntary relinquishment of a known right." Delvecchio v. Delvecchio,146 Conn., 188,148 A.2d 553 (1959). A fundamental and important interest was impacted by Crystal's waiver. The interest she surrendered that day is a right with constitutional dimensions which requires the court to act strictly in accordance with the requirements of procedural due process.Santosky v. Kramer., 455 U.S. 745 (1982). Further, the burden of proof concerning her claims rests squarely on Crystal M. to demonstrate by a CT Page 3150 preponderance of the evidence. The court finds that she has not met her burden.
The court does not find Crystal credible in her claim that she did not knowingly and voluntarily enter into the waiver of her rights as a parent. Crystal testified that she knew what the hearing was about and that she would lose her rights to her children. It was not until after her incarceration over a month later that she made this claim, in both retaliation and anger that her demands were not met. The court concludes, from the observations of those present; her own attorney and the DCF social worker, that Crystal M. was aware and understood both her rights and the nature of the proceeding on June 30, 2000. The court's canvass was direct and unequivocal. The court further finds that Crystal M. was afforded her procedural due process rights and that her consent was valid. The court finds that both judgments of the termination of her parental rights to her children are valid and that DCF remains these children's statutory parent until such time as the planned adoptions are completed. For the foregoing reasons, the motion to reopen and set aside the judgments is denied.
Barbara M. Quinn, Presiding Judge Child Protection Session